**IN THE COURT OF APPEALS OF IOWA**

No. 20-0357
Filed August 19, 2020

**IN THE INTEREST OF M.P. and C.P.,**
**Minor Children,**

**K.P., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

David R. Fiester, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Julie Trachta of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., May, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

The father of M.P., born in 2010, and C.P., born in 2011, appeals the termination of his parental rights. Because the father has shown little or no progress in being able to safely parent the children, we agree with the juvenile court and affirm.

The family came to the attention of the Iowa Department of Human Services (DHS) in 2012 on reports the parents were neglecting the children's health and well-being and leaving the young children unsupervised. The home was filthy and in disarray, posing safety risks to the children. The children were adjudicated in need of assistance in April 2012. Since that time, the children have been back and forth from foster placements to the mother's home.[1] After the parents showed no "sustained improvements" in providing a safe environment for the children, the State petitioned to terminate the parental rights of both parents in October 2018.

By the time the matter came on for hearing in May 2019, the father began to demonstrate some stability. He was employed and living with a woman who afforded him stable housing and provided love and protection for the children. Because of the father's improved situation—including fewer safety concerns due to the presence of the paramour—only the mother's parental rights were terminated. The juvenile court continued a trial home placement with the father, which began just one month earlier. Nonetheless, the court noted "services have been offered to the family for more than a decade without sustained change" and

---

[1] The mother's parental rights were terminated in May 2019.

"the concerns with supervision, parenting, employment, mental health and other issues are virtually the same as at the time of the 2012 removal."

A few months later, in September 2019, DHS learned that the father had suddenly packed his belongings and those of the children and left the home of the paramour. The children were located at their school; the father was waiting in the parking lot, claiming he took the bus to arrive there. However, his story strained credulity because he was seen exiting a car that was driven by the mother. The father continued his story by stating he intended to take the bus downtown and from there he would walk around and look for housing, with the two children and all their belongings in tow. He had no plans as to where they would stay that night. He left his cell phone at his paramour's home but did a factory reset, which wiped it of all information, so no one could contact him. DHS contacted the paramour, who came to the school and was allowed to take the children back to her home, where they have remained throughout the rest of these proceedings.

In December 2019, the State again petitioned to have the father's rights terminated. After a February 10, 2020 hearing, the juvenile court granted the petition. The father appeals.

In our de novo review of proceedings terminating parental rights, we employ a three-step statutory framework—statutory grounds, best interests, and impediments—as fully explained in our case law. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116 (2019). *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

The father's rights were terminated under Iowa Code section 232.116(1)(f), which requires the court to find by clear and convincing evidence:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father challenges the fourth element.[2]

Attached to the 2018 termination petition was an affidavit prepared by DHS, which included these concerns:

> The Department is concerned by the length of time that the children have been out of the home. The [father has] made minimal progress in addressing the safety concerns and [has] made minimal and inconsistent efforts to complete case plan expectations. The [father does] not appear to be able to meet all of the needs of these children on a consistent basis without constant oversight by the Department of Human Services and other service providers. There have been numerous instances of lack of follow through in every area by the [father] documented in [family safety, risk, and permanency] reports and reports by the Department. Permanency needs to be addressed as the [father has] not consistently participated in case plan expectations and [does] not demonstrate an understanding of the safety concerns and concerns about the well-being of the children that lead to DHS and Juvenile Court involvement. The [father becomes] argumentative and combative when given parental

---

[2] The father's petition also challenges the third element, that the children have been removed from the parents' care for the required time. *See* Iowa Code § 232.116(1)(f)(3). However, the father gives no explanation of how the third element was not met. Therefore, the father has waived argument on the third element. *See C.B.*, 611 N.W.2d at 492. Regardless, we note the children were removed from the parents and placed in foster care in November 2017, placed with the father on a trial basis in April 2019, formally returned to the father's custody in the June 2019 permanency order, and again removed from the father in September 2019.

> guidance, feedback from service providers and medical recommendations that [he does] not agree with.

The transcript of the current termination hearing confirms the father's shortcomings remained. His former paramour provided stability and protection in her role as caregiver for the children, which allowed the father to have custody of the children from June 2019 until removal just a few months later. Without that backing, it is clear the juvenile court would have terminated the father's rights in 2019, at the same time as the mother's rights were terminated.

After the September 2019 removal, DHS became aware that the father had stopped taking the children to their much needed physical- and mental-health appointments. His excuse was that he thought there were too many people in the children's lives. Since removal, he has failed to attend most of the reinstated appointments. Although he was offered twice-weekly visitation, he often failed to attend or left early, causing the service providers to reduce visits to once per week, fully supervised. The visits were held in a public setting because the father was living in the home of the mother's father, which was not a suitable setting for the children. But during the visits, he was prone to not keeping watch over the whereabouts of the children, a problem that was identified years earlier. There were three founded abuse reports against the father—one in 2010 and two in 2012, all finding "denial of critical care: failure to provide adequate supervision or shelter." As the juvenile court concluded when it terminated the father's rights, the father has "been provided a multitude of services for many years, yet the concerns with supervision, parenting, employment, mental health and other issues are virtually the same as at the time of the 2012 removal." This language echoes the court's

concerns when it terminated the mother's rights. It was those unaddressed issues that provided the juvenile court with clear and convincing evidence the children could not be safely returned to the father. We affirm the statutory ground for termination.

Next, the father challenges the finding that termination is in the best interests of the children. *See* Iowa Code § 232.116(2). In addition to the concerns already discussed, it is important to note the children have been in the father's care less than six months in the past eight years, which includes a trial placement before the juvenile court placed custody with him. Moreover, that six months of care was primarily undertaken by the paramour. Yet, the father chose to suddenly uproot the children from that protective care, with no foresight or plan for the immediate or long-term safety of the children. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating that a child's safety and the child's need for a permanent home are the "defining elements" in determining a child's best interests). As the juvenile court found, the children "are in need of a stable and permanent home in order to continue their growth and development. They are [both] showing signs of suffering the effects of the instability of their lives." We agree and affirm the best-interests findings.

Finally, the father asserts the bond he shares with the children should preclude termination. *See* Iowa Code § 232.116(3)(c) (stating the juvenile court need not terminate if "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). While acknowledging the bond, the service providers for the children all noted the need for stability and safety outweighed any bond. *See In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990) ("Children

simply cannot wait for responsible parenting.  Parenting . . . must be constant, responsible, and reliable.").  We agree.  It is time the children were settled in a permanent, safe home.

**AFFIRMED.**